IN THE MATTER OF THE CONTROLLED DANGEROUS SUB-
STANCE REGISTRATION OF MARVIN GASTMAN, D. O.

Superior Court of New Jersey
Appellate Division

Argued November 30, 1976—Decided January 12, 1977.

Before Judges CRANE, MICHELS and PRESSLER.

Mr. *Jeffrey Barton Cahn* argued the cause for appellant Marvin Gastman, D. O. (*Messrs. Sills, Beck, Cummis, Radin & Tischman, Mr. Arthur J. Sills* of counsel).

Ms. *Charlotte Kitler*, Deputy Attorney General, argued the cause for respondent State Commissioner of Health (*Mr. William F. Hyland*, Attorney General of New Jersey, attorney; *Mrs. Erminie L. Conley*, Deputy Attorney General, of counsel).

The opinion of the court was delivered by

MICHELS, J. A. D. Appellant Marvin Gastman, an osteopathic physician, appeals from a final order of the State Commissioner of Health suspending for six months his New Jersey controlled dangerous substances registration for violations of Department of Health regulations relating thereto.

Dr. Gastman operated an office in Ringwood, New Jersey, spending approximately 40% of his time in the medical management of obesity and the remainder in the general practice of medicine and surgery. To aid in this practice, Dr. Gastman obtained a State registration enabling him to dispense medications — particularly amphetamines — denominated Schedule II drugs under the Dangerous Substances Control (CDS) Act. See *N. J. S. A.* 24:21-6 and 10; *N. J. A. C.* 8:65-10.1 (Supp. 6-30-74).

In August 1973 Dr. Gastman's Ringwood office was inspected by the State Department of Health to determine if Dr. Gastman was in compliance with the CDS Act and the rules and regulations promulgated by the Commissioner thereunder. See *N. J. S. A.* 24:21-10(f). The violations found to exist at that time were: (1) the failure to take a biennial inventory, (2) the failure to record on federal drug

order forms when CDS items are received as well as quantity received, and to retain the forms for two years, and (3) the failure to keep Schedule II controlled dangerous substances in a safe or in a substantially secure cabinet. In September 1973 Dr. Gastman was notified of these violations, urged to take remedial action, and informed of the penalties that could result from further violation of the CDS Act. A hearing was held pursuant to *N. J. A. C.* 8:65-9.16. Dr. Gastman appeared *pro se,* and although violations were found to exist, no penalty was imposed. The Ringwood office has not been reinspected since August 1973, and Dr. Gastman's CDS registration for that office has been annually renewed.

In January 1975 Dr. Gastman opened an office in Fort Lee which he used six to eight hours a week for a practice limited to the management of obesity. He obtained a CDS registration for this office as well, as required by *N. J. S. A.* 24:21-10(e), and presently dispenses there approximately 40,000 amphetamine capsules a month.[1]

In January 1976 the State Department of Health inspected Dr. Gastman's Fort Lee office. The inspection revealed substantially the same violations noted in his Ringwood office in August 1973. Specifically, Dr. Gastman was charged with: (1) failure to make a biennial inventory, as

---

[1]Delcobese, the principal amphetamine which Dr. Gastman was dispensing from his Fort Lee office at the rate of approximately 1,250 pills an hour, is manufactured by Delco Chemical Co., Inc., Mount Vernon, New York. Included in the information concerning Delcobese prepared by the manufacturer is the following black-letter warning:

Amphetamines have a high potential for abuse. They should thus be tried only in weight reduction programs for patients in whom alternative therapy has been ineffective. Administration of amphetamines for prolonged periods of time in obesity may lead to drug dependence and must be avoided. Particular attention should be paid to the possibility of subjects obtaining amphetamines for nontherapeutic use or distribution to others, and the drugs should be prescribed or dispensed sparingly. [*Physicians' Desk Reference* 725 (29 ed., 1975]

required by *N. J. A. C.* 8:65–5.7; (2) failure to record on federal order forms for Schedule II substances the items received from the supplier and the dates (*N. J. A. C.* 8:65–6.9 (e)), and to keep those forms for two years (*N. J. A. C.* 8:65–6.13(c)), and (3) failure to keep Schedule II substances stored in a securely locked, substantially constructed cabinet. (*N. J. A. C.* 8:65–2.5(b)). As a result, on March 10, 1976 the Deputy Commissioner of Health issued an order to show cause why Dr. Gastman's CDS registration should not be suspended or revoked. See *N. J. S. A.* 24:21–12a(3).

On April 13, 1976 a hearing was held before a hearing officer. Dr. Gastman, who appeared *pro se,* denied the first and third charges and alleged that corrective measures were being effected regarding the second charge. He contended that his drug storage was adequate. In support, he stated that he took corrective measures to cure the violation found at his Ringwood office with respect to drug security by substituting a solid core door for a hollow core door on his storage closet and by installing a tumbler lock, and that those same security measures were taken by him at his Fort Lee office. He attempted to excuse the other violations by claiming that required records had been stolen during a break-in at his Fort Lee office in August 1975. At the conclusion of the hearing, the hearing officer submitted his report of hearing, findings and recommendations. He found that Dr. Gastman failed to adhere to state regulations in 1975, as he similarly failed to do in 1973, and recommended that his registration for Controlled Dangerous Substances be revoked. In reaching this decision, the hearing officer, in part, stated:

There was no dispute at the hearing that Doctor Gastman received notice in September 1973, that the acts alleged in the March 10, 1976 letter were violations of State regulations. It is not denied that the May 1, 1975 inventory was not available, nor that certain forms were missing. Doctor Gastman asserts that these deficiencies were the result of circumstances beyond his control, i. e., a theft of the once existing documents. However, Doctor Gastman's testimony lends some doubt as to the theft of these documents, and raises some question as to their prior existence.

No mention of a theft was made by Doctor Gastman until this hearing. The police officer's report of the theft indicates: 1) nothing was taken; 2) the theft occurred in early August, and 3) the Controlled Substances cabinet was in fact broken into; all in contradiction of Doctor Gastman's testimony concerning the theft. Finally, Doctor Gastman could have taken an inventory subsequent to the break-in to reflect drugs on hand on a given date. He didn't and overages were found.

Typical is Doctor Gastman's comment regarding his failure to date and identify the quantity of items received on the federal forms; conceding the irregularity of their handling by him up to a given point in time and offering subsequent corrective measures as purging the prior errors. It is too little, too late.

Dr. Gastman, then represented by counsel, moved to supplement the record. The motion was denied. He then filed execptions to the hearing officer's report. On September 17, 1976 the Commissioner entered a final order adopting the findings of fact and conclusions of law of the hearing officer and permanently revoking Dr. Gastman's New Jersey controlled dangerous substance registration. Thereafter, the Commissioner reviewed the entire record again, including the materials submitted on the motion to supplement, and informed Dr. Gastman that she was adhering to her prior conclusion that he violated the controlled dangerous substance regulations. However, the Commissioner modified the penalty of permanent revocation to six months' suspension of his CDS registration because of Dr. Gastman's subsequent attempts to correct the violations and because of the adverse effect that permanent revocation might have upon the other physician with whom he was in practice. Dr. Gastman appeals.

In seeking (1) a reversal of the amended final order of suspension of his CDS Registration, (2) alternatively, a remand for supplementation of the record, or (3) a modification of the sanction to a reprimand, Dr. Gastman raised the following issues in his brief:

POINT I: AS A MATTER OF LAW APPELLANT CANNOT BE FOUND TO HAVE VIOLATED THE

BIENNIAL INVENTORY REQUIREMENTS OF N. J. A. C. 8:65-5.7(b).

POINT II: THERE IS NO EVIDENCE IN THE RECORD TO SUPPORT ANY ALLEGED VIOLATION OF N. J. A. C. 8:65-2.5 REQUIRING CONTROLLED DANGEROUS SUBSTANCES TO BE STORED IN A SECURELY LOCKED, SUBSTANTIALLY CONSTRUCTED CABINET. THE FINDING OF A VIOLATION OF THAT REGULATION MUST BE REVERSED AS A MATTER OF FACT AND AS A MATTER OF LAW.

 A. *There Are No Facts of Record to Sustain a Finding of Violation of N. J. A. C. 8:65-2.5.*

 B. *Since N. J. A. C. 8:65-2.5 is Void for Vagueness, the Finding that Appellant Violated It Must Be Reversed.*

POINT III: THE DEPARTMENT OF HEALTH HAS FAILED TO CARRY ITS BURDEN OF PROOF SET FORTH IN N. J. A. C. 8:65-9.35 WITH RESPECT TO ANY OF THE VIOLATIONS SET FORTH IN THE ORDER TO SHOW CAUSE.

POINT IV: THE DECISION OF THE COMMISSIONER OF HEALTH IS IN VIOLATION OF THE PROVISIONS OF N. J. S. 24:21-12(a)(3).

POINT V: APPELLANT WAS IMPROPERLY DENIED A REMEDIAL HEARING PROVIDED BY N. J. A. C. 8:65-9.16.

POINT VI: THE SIX MONTH SUSPENSION OF APPELLANT'S C. D. S. REGISTRATION SHOULD BE SET ASIDE AS UNDULY SEVERE UNDER THE FACTS OF THIS CASE.

POINT VII: THE PROCEDURAL DENIAL BY THE DEPARTMENT OF HEALTH OF APPELLANT'S MOTION TO SUPPLEMENT THE RECORD PRIOR TO THE FILING OF EXCEPTIONS TO THE HEARING OFFICER'S REPORT VIOLATED APPELLANT'S RIGHT TO DUE PROCESS OF LAW AND REQUIRES REVERSAL AND A REMAND FOR THE TAKING OF ADDITIONAL EVIDENCE BY THE DEPARTMENT OF HEALTH.

■ The scope of judicial review of the Commissioner's determination is thoroughly established. Our role in reviewing her findings is to determine " 'whether the findings made could reasonably have been reached on sufficient credi-

ble evidence present in the record,' considering 'the proofs as a whole,' with due regard to the opportunity of the one who heard the witnesses to judge of their credibility * * * and * * * with due regard also to the agency's expertise where such expertise is a pertinent factor." *Mayflower Securities v. Bureau of Securities,* 64 *N. J.* 85, 92–93 (1973); *Jackson v. Concord Co.,* 54 *N. J.* 113, 117–118 (1969); *Close v. Kordulak Bros.,* 44 *N. J.* 589, 599 (1965); *Associated Utility Services v. Board of Review,* 131 *N. J. Super.* 584, 588 (App. Div. 1974).

Dr. Gastman's contentions are interlaced with arguments that he did not violate any of the regulations promulgated by the Commissioner, that the regulations he allegedly violated were vague, and that none of the violations charged against him "involved even a suggestion of drug abuse" by him, his staff or his patients. Dr. Gastman claims that since the violations do not relate to the loss, diversion or improper use of any controlled dangerous substance, they are merely technical and do not reflect adversely on his reliability and integrity with respect to such substances. As such, the violations do not require the severe sanction of the suspension of his registration for six months. We disagree and think that Dr. Gastman takes too narrow a view of the issues involved.

██ ██ In determining standards fixed by statute or regulation, we are not confined to specific terms. Rather, we look at the statutory policy sought to be achieved by examining the entire statutory enactment and decide whether the standards may be reasonably implied therefrom. See *Securities and Exchange Comm'n v. Chenery Corp.,* 332 *U. S.* 194, 202, 67 *S. Ct.* 1575, 91 *L. Ed.* 1995, 2002 (1947); *Mitchell v. Cavicchia,* 29 *N. J. Super.* 11 (App. Div. 1953). *Cf. R. H. Macy & Co. v. Director, Div. of Taxation,* 77 *N. J. Super.* 155, 169 (App. Div. 1962), aff'd 41 *N. J.* 3 (1963). That which is implied is as much a part of the law as that which is expressed. As indicated by Justice Jacobs in *Ward v. Scott,* 11 *N. J.* 117, 123–124 (1952), "But the

exigencies of modern government have increasingly dictated the use of general rather than minutely detailed standards in regulatory enactments under the police power." See also *In re Com'r. of Banking v. Parkwood Co.*, 98 *N. J. Super.* 263 (App. Div. 1967); *Berardi v. Rutter*, 42 *N. J. Super.* 39 (App. Div. 1956); aff'd *sub. nom. In re Berardi*, 23 *N. J.* 485 (1957); *Cherry Hill Tp. v. N. J. Racing Comm'n.*, 131 *N. J. Super.* 125 (Law Div.), aff'd 131 *N. J. Super.* 482 (App. Div. 1974). In short, where the Legislature has entrusted an administrative agency with the responsibility of selecting the means of achieving the statutory policy, the relation of the remedy to the policy is peculiarly a matter for administrative competence. *American Power & Light Co. v. S.E.C.*, 329 *U. S.* 90, 112, 67 *S. Ct.* 133, 91 *L. Ed.* 103, 119 (1946). Therefore, we should not overturn the Commissioner's determination unless we find it unwarranted in law or without justification in fact.

██ ██ In the light of the foregoing principles, we have carefully reviewed this record and considered the arguments presented and are completely satisfied that Dr. Gastman violated the regulations here involved; that his failure to comply with these regulations reflected adversely on his reliability and integrity with respect to controlled dangerous substances, and that the suspension of his controlled dangerous substances, registration for six months was warranted, was not arbitrary or unreasonable, and did not constitute a mistaken exercise of discretion. See *Knoble v. Waterfront Comm'n of N. Y. Harbor*, 67 *N. J.* 427, 431–432 (1975). Giving due regard to the Commissioner's expertise with respect to problems involving the distributing, dispensing and prescribing of controlled dangerous substances, and to her adoption of the findings of the hearing officer, who had the opportunity to hear and see the witnesses and to judge their credibility, there is sufficient credible evidence in this record as a whole to support the Commissioner's determination.

██ Even if we were to accept Dr. Gastman's contention that he had not violated the biennial inventory requirement

of *N. J. A. C.* 8:65–5.7 for his Fort Lee office by failing to inventory his drugs in May 1975, because the CDS registration for that office was only issued to him in January 1975[2] and if we were to agree either that the evidence did not support a finding that he had violated the provisions of *N. J. A. C.* 8:65–2.5 requiring that controlled dangerous substances be stored in a securely locked, substantially constructed cabinet or that *N. J. A. C.* 8:65–2.5 was void for vagueness, nevertheless evidence of serious noncompliance with CDS regulations would exist. We are satisfied that Dr. Gastman's failure to record the amounts of controlled dangerous substances received from suppliers and the dates upon which he received them on federal order forms provided for Schedule II substances, as required by *N. J. A. C.* 8:65–6.9, constituted by itself a violation the nature of which directly impugned Dr. Gastman's reliability and integrity with respect to controlled dangerous substances. His flagrant disregard of this important regulation resulted in effect in the concealment of the dispensing of vast amounts of Schedule II substances. This violation is not merely technical or of little consequence. In the circumstances, the six months' suspension of his CDS registration was clearly warranted.

---

[2]Dr. Gastman argues that when one CDS registrant operates several offices, he need not conduct his biennial inventories simultaneously, but rather, may time them to coincide with the anniversary of the opening date of each office location. Thus, although a biennial inventory of his Ringwood office was due in May 1975, Dr. Gastman contends that an inventory was not required in Fort Lee until January 1977, two years after that office opened. We disagree. Although a separate inventory is required by *N. J. A. C.* 8:65–5.5(b) for "each registered location," the date on which the inventory must be taken is governed by *N. J. A. C.* 8:65–5.6, which states that the date upon which the *person*, not the location, is first registered determines subsequent inventory dates. *See also N. J. A. C.* 8:65–5.7. We note that without such a requirement, a registrant with more than one office could shuttle drugs from one location to another and thereby maintain considerable drug overages or shortages without detection.

■ We also find no merit in Dr. Gastman's claim that he was denied an opportunity to present his views and to be represented by counsel at the administrative hearing. Quite to the contrary, the order to show cause issued to him unequivocally informed him of the nature of the proceeding and of his right to be represented by counsel. The order, in pertinent part, provided:

THEREFORE, You, the individual named herein are ordered to appear in a hearing before the Commissioner, New Jersey Department of Health to show cause why the registration issued to you should not be suspended or revoked.

\* \* \* \* \* \* \* \*

You are hereby notified that at the time and place specified in this order you have the right to be represented by Counsel, cross examine witnesses, and to present witnesses in your behalf. The scheduled hearing shall be conducted in accordance with the provisions of the Administrative Practice and Procedures (copy attached). Although representation by Counsel is not mandatory on your part, it has been the experience of this Department that Counsel is advisable.

Dr. Gastman knowingly, voluntarily and intelligently waived his right to be represented by counsel at the hearing when he appeared without counsel and defended himself. See *D. H. Overmeyer Co. v. Frick Co.,* 405 *U. S.* 174, 186–187, 92 *S. Ct.* 775, 31 *L. Ed.* 2d 124, 134–135 (1972). *Cf. State v. McKnight,* 52 *N. J.* 35, 47 (1968).

■ ■ Finally, defendant contends that because the Department of Health had not adopted and published rules pertaining to the subject of rehearing, its denial of his request to reopen the proceedings to supplement the record constitutes a denial of due process. Defendant's argument is predicated on the premise that an administrative agency must have formally adopted a rule governing procedures before it can act in this fashion. We disagree. Absent specific legislation, an administrative tribunal may mold its own proceedings so long as they operate fairly and conform with due process principles. *Laba v. Newark Bd. of Ed.,* 23 *N. J.* 364, 382 (1957). See also, *In re Shelton College,* 109 *N. J. Super.* 488, 492 (App. Div. 1970). Our decision in

*Merry Heart Nursing and Conv. Home, Inc. v. Dougherty,*
131 *N. J. Super.* 412 (App. Div. 1974), relied upon by defendant, does not hold to the contrary but merely states that when rules are promulgated they must be filed with the Secretary of State.

Moreover, there is support in the rules for the action taken here. *N. J. A. C.* 8:65–9.20 states:

Procedures in any administrative hearing held under the Act are governed generally by the rule making and/or adjudication procedures set forth in the Administrative Procedure Act (5 U. S. C. 551–559) and specifically by the procedures set forth in this Subchapter, except where more specific regulations (set forth in 301.51–301.57, 303.41–303.47, or 308.41–308.51 of the Act) apply. [The above section numbers refer to the Federal Food, Drug and Cosmetic Act, 21 *U. S. C. A.* 301, *et seq.*]

█ It has been held, pursuant to the Federal Administrative Procedures Act, that "It has been almost a rule of necessity that rehearings were not matters of right, but were pleas to discretion. And likewise it has been considered that the discretion to be invoked was that of the body making the order, and not that of a [judicial] reviewing body." *Interstate Commerce Comm'n v. Jersey City,* 322 *U. S.* 503, 514–515, 64 *S. Ct.* 1129, 1134, 88 *L. Ed.* 1420, 1428 (1944). As stated in *Northern Valley Transfer v. I.C.C.,* 192 *F. Supp.* 600 (D. C. N. J. 1961):

Administrative rehearings are not matters of right but of pleas to discretion. The discretion to be invoked is that of the body making the order, not that of a reviewing body. Interstate Commerce Commission v. City of Jersey City, 1944, 322 U. S. 503, 64 S. Ct. 1129, 1134, 88 L. Ed. 1420. At page 514 of the opinion in that case, at page 1134 of 64 S. Ct., we are reminded that, if litigants were entitled to rehearing as a matter of law after the order of the administrative body upon the record before the examiner, because of new circumstances arising or facts discovered between the examiner's report and the commission's hearing on exceptions thereto, "there would be little hope that the administrative process could ever be consummated in an order that would not be subject to reopening." [at 606]

See also *Northeast Broadcasting, Inc. v. F.C.C.*, 130 *U. S. App. D. C.* 278, 400 *F.* 2d 749 (1968); *Cardinale Trucking Co. v. United States*, 232 *F. Supp.* 339 (D. C. N. J. 1964); *Campus Travel, Inc. v. United States*, 224 *F. Supp.* 146 (S. D. N. Y. 1963). But *cf. R.* 2:5-5(b). Thus denial of a rehearing, alone, does not constitute a violation of due process.

In New Jersey a hearing may be opened for good and sufficient cause "to serve the ends of essential justice and the policy of the law." *Handlon v. Belleville*, 4 *N. J.* 99, 107 (1950). See also, *Ruvoldt v. Nolan*, 63 *N. J.* 171, 183 (1973); *Burlington Cty. Evergreen Pk. Mental Hosp. v. Cooper*, 56 *N. J.* 579, 600 (1970). Reconsideration has generally been affected by considerations of elapsed time, diligence and reliance, and has been granted generally when illegality of the administrative action has been shown or when there was evidence of extraordinary circumstances, illegality, fraud, mistake, new evidence or change in circumstances. See *Ruvoldt, supra*, 63 *N. J.* at 183–184; *Evergreen Pk., supra*, 56 *N. J.* at 600; 2 *Am. Jur.* 2d, *Administrative Law*, §§ 523–525.

 All the information which Dr. Gastman seeks to offer was available to him at the time of the initial hearing. It was his own decision not to retain counsel or bring forth this evidence that resulted in its omission from the hearing record. Clearly, then, Dr. Gastman cannot now claim illegality of proceedings or new evidence as a basis for his claim. Nor does it appear that such evidence, if presented, would alter the final decision, since that evidence goes merely to the measures taken to cure the violation and does not dispute the fact that the underlying violations had been committed. *Cf. R.* 4:50–1; *Aiello v. Myzie*, 88 *N. J. Super.* 187 (App. Div. 1965), certif. den. 45 *N. J.* 594 (1965); *State v. Speare*, 86 *N. J. Super.* 565 (App. Div. 1965), certif. den. 45 *N. J.* 589 (1965).

Moreover, the letter sent to Dr. Gastman refusing his request to reopen the hearing stated:

Please be advised that I have discussed this matter fully with appropriate personnel of this Department and the decision was to continue our policy of not reopening hearings after such hearings have been conducted in accordance with the prescribed regulations of the Department and in accordance with the provisions of the Administrative Procedures Act. Dr. Gastman was fully advised of his right to engage counsel well in advance of the scheduled hearing date.

This statement, when considered along with the attendant circumstances, appears to satisfy the requirement of 5 *U. S. C. A.* 555(e) of the Federal Administrative Procedure Act which states:

(e) Prompt notice shall be given of the denial in whole or in part of a written application, petition, or other request of an interested person made in connection with any agency proceeding. Except in affirming a prior denial or when the denial is self-explanatory, the notice shall be accompanied by a brief statement of the grounds for denial. [Pub. L. 89–554, Sept. 6, 1966, 80 Stat. 385]

*See Northeast Broadcasting, Inc. v. F. C. C.,* 130 U. S. App. D. C. 278, 400 *F. 2d* 749, 758–759 (1968).

Accordingly, the final order of the State Commissioner of Health suspending for six months Dr. Gastman's controlled dangerous substances registration for violation of Department of Health Regulations relating to controlled dangerous substances is affirmed.