702 A.2d 1298

DIVISION OF STATE POLICE, PETITIONER–RESPONDENT, v. MARK JIRAS, RESPONDENT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued March 17, 1997—Decided November 17, 1997.

Before Judges BROCHIN, KESTIN and EICHEN.

*Mark D. Schorr* argued the cause for appellant (*Sterns & Weinroth,* attorneys; *Mr. Schorr,* of counsel and on the brief).

*Larry R. Etzweiler,* Senior Deputy Attorney General, argued the cause for respondent (*Peter Verniero,* Attorney General, attorney; *Mary C. Jacobson,* Assistant Attorney General, of counsel; *Mr. Etzweiler,* on the brief).

The opinion of the court was delivered by

KESTIN, J.A.D.

In a previous appeal, Docket No. A–4282–93, we remanded this matter "for reconsideration of the penalty after the parties have been afforded the opportunity to present evidence and argument relevant to the appropriate penalty for Jiras's misconduct." Charges against Trooper Mark Jiras for an unprovoked assault upon a prisoner at a detention center, as conduct violative of the rules and regulations of the Division of State Police (Division), had been sustained after a hearing pursuant to the Administrative Procedure Act, *N.J.S.A.* 52:14B–9, –10, and his dismissal from the Division was ordered in a final decision by the head of the agency at the time, Lt. Col. Dominick C. Trocchia, Acting Superintendent.

The underlying facts of the matter were recited in our earlier, unpublished opinion. We will not rehearse them here. We remanded for reconsideration of the penalty, the only issue on appeal, because we discerned that the primary basis of the penalty was the Acting Superintendent's determination, adopting the Administrative Law Judge's view, "that Jiras's attitude at the hearing manifested a propensity for future misconduct." We held that Jiras had not had an adequate opportunity, consonant with principles of fundamental fairness, to address that question.

The remand hearing was conducted directly before the agency head, Col. Carl A. Williams, Superintendent. See *N.J.S.A.* 52:14F–8b. Evidence was presented relative to Jiras's service record with the Division. Also, three witnesses were offered on behalf of Jiras; each testified concerning Jiras's exemplary background as a trooper. Each further expressed the view that Jiras's conduct in the single incident which gave rise to the charges was disappointing, but essentially uncharacteristic of him.

In closing argument on Jiras's behalf, his attorney stressed the service record the trooper had compiled: excellent with only minor blemish. He argued that the single incident at issue was anomalous; and that Jiras was a committed, able, loyal trooper whose sixteen-year career with the Division commended him for

continued service. The deputy attorney general presenting the charges argued that the single incident of unprovoked violence toward a prisoner was, in itself, a sufficiently grave departure from accepted standards of conduct to disqualify Jiras from continued service.

In concluding that termination from service was the appropriate penalty for the acknowledged infraction, the Superintendent specifically eschewed any reliance on eleven complaints that had been filed concerning Jiras over the course of his career, because nine of them had been determined to be unsubstantiated and the remaining two unfounded. The fact that Jiras had attended human relations training two months before the incident which gave rise to the charges was seen by the Superintendent as "not conclusive of Mr. Jiras's amenability for rehabilitation or suitability for service as a State Trooper but it is a factor to consider in assessing the appropriate penalty to be imposed, as is the fact that Mr. Jiras served the Division for more than four years following the ... incident with only one other disciplinary infraction." Jiras's personal background, his service record generally, and the testimony of the supporting witnesses were also factors considered. The underlying incident itself was evaluated for such details as had been developed in the record and for the qualities of Jiras's conduct therein.

The Superintendent reached the following conclusion:

> The severity of Jiras's transgressions cannot be minimized. [The prisoner] had a right to be free from such an attack by someone entrusted with enforcing the law. While the attack may have caused [the prisoner] no significant physical injury, the injury to the integrity of the Division cannot be overstated. To command the respect of the citizenry, the Division must rid itself of those officers who would disgrace its ideals of honor, duty and fidelity. This incident, standing alone, warrants dismissal absent some explanation for its occurrence indicating that a less severe penalty ought to be considered. Given the opportunity, Mr. Jiras offered no explanation for his attack on [the prisoner]. We have an obligation to protect the public, whether it be from criminals on the streets or from police officers who abuse their solemn oath and position. The penalty is harsh, but so were the transgressions.

As the head of the Division the ultimate responsibility for maintaining discipline among State Police Officers falls to me. As the Supreme Court observed in *Matter of Carberry*, 114 *N.J.* 574, 556 *A.*2d 314 (1989):

> The weight of that responsibility becomes apparent on considering that state troopers are authorized to carry firearms, ... to use deadly force under justifiable circumstances, ... and to enforce law and order throughout the state. [*Id.* at 578, 556 *A.*2d 314 (citations omitted).]

The Division cannot maintain among its ranks troopers whose conduct indicates that they cannot be trusted with such awesome powers and responsibilities. An unprovoked and unwarranted attack on a prisoner offering no resistance and whose hands are cuffed behind his back is such conduct. *Cf. In re Tuch*, 159 *N.J.Super.* 219, 387 *A.*2d 1199 (App.Div.1978) (police officer removed for striking a manacled prisoner); *State v. Lore*, 197 *N.J.Super.* 277, 484 *A.*2d 1259 (App.Div.1984) (police officer convicted of official misconduct as a result of simple assault on citizen properly required to forfeit his office as municipal police officer); *Henry v. Rahway State Prison*, 81 *N.J.* 571, 580, 410 *A.*2d 686 (1980) (deliberate falsification of report, even with good intentions, could justify removal of a prison guard). Such conduct can no more be tolerated by the law enforcement profession in this State than can be use of illegal drugs. *Cf. Matter of Carberry*, 114 *N.J.* at 582, 556 *A.*2d 314[ ].

Jiras was given the opportunity to present evidence and argument on the appropriate penalty to be assessed in this matter. Although given the opportunity at the May 6 hearing, Mr. Jiras offered no explanation for his unprovoked and unwarranted assault on [the prisoner]. While acknowledging that he had done wrong and that he never intended to go to a hearing, he sought, through counsel, to minimize the severity of his conduct. Counsel for Mr. Jiras took repeated exception to the use of the word "assault" to describe Jiras's conduct in relation to [the prisoner]. He insisted on characterizing the conduct as "manhandling," as though that would somehow make the conduct less severe and less offensive.

*   *   *   *   *   *   *   *

Describing Jiras's conduct as "manhandling" does not diminish the ALJ's findings that a violent physical and verbal attack was unleashed by Mr. Jiras on [the prisoner]. That attack was a blatant breach of the public trust that damaged the integrity of the Division of State Police and all of its members. That conduct warrants dismissal.

▮ In appealing the Superintendent's decision ordering his dismissal, Jiras argues:

THE PENALTY OF TERMINATION IS WHOLLY DISPROPORTIONATE TO THE CONDUCT CHARGED AND THE COURT SHOULD EXERCISE ITS DISCRETION TO FIX A LESSER PENALTY IN ORDER TO FINALLY AND COMPLETELY DETERMINE THE CAUSE OF REVIEW.

The argument calls upon us to substitute our judgment for that of the Superintendent. Jiras contends that his excellent record with

the Division, the supportive testimony of others, and his repentant attitude, establish that he was suitable for continued service and was amenable to attitudinal rehabilitation. The Division argues that a determination by its head, that the type of incident which occurred here warrants dismissal in the absence of some explanation for its occurrence, is entitled to substantial deference, notwithstanding the positive service record elements which Jiras emphasizes.

■ We unquestionably possess the authority to evaluate the penalty ordered and, if warranted, to set it aside and determine the appropriate punishment for the offense established. *West New York v. Bock*, 38 *N.J.* 500, 519–20, 186 *A.*2d 97 (1962). Yet, we are not here concerned with a disciplinary infraction for which a range of penalties is necessarily available based upon the employee's service record and the salutary policy of incremental sanctions. *See id.* at 520–24, 186 *A.*2d 97. The charge that Jiras's behavior in performing his duties brought discredit upon both himself and the Division is so serious as to go to the heart of his capacity to function appropriately as a State trooper. *Cf. Cosme v. Borough of East Newark Twp. Comm.*, 304 *N.J.Super.* 191, 206, 698 *A.*2d 1287 (App.Div.1997). The existence of so serious a charge necessarily implicates basic policies governing the conduct of members of the Division, as well as considerations bearing individually upon the employee.

■ We are mindful of the special status of the Division of State Police and the special standards of discipline that apply to its members, *see State v. State Troopers Fraternal Ass'n*, 134 *N.J.* 393, 413–19, 634 *A.*2d 478 (1993), and of the Superintendent's duty to maintain discipline among the troopers as one means of promoting the public interest and safety, *see Matter of Carberry*, 114 *N.J.* 574, 578, 556 *A.*2d 314 (1989). In the face of these considerations, it is not fitting that we should substitute our judgment for the Superintendent's policy determination that so basic a breach of performance standards and of duty or discipline as occurred here calls for termination in the absence of special circumstances,

explanation or excuse amply demonstrated by the person charged. The record supports the Superintendent's conclusion that no such showing was adequately made here, as well as his implicit determination that Jiras's conduct in the acknowledged incident bore very basically on his capacity to function as a State trooper. As a general rule, in reviewing administrative agency decisions, we accord substantial deference to an agency head's choice of remedy or sanction, seeing it as a matter of broad discretion, *In re Scioscia*, 216 *N.J.Super.* 644, 660, 524 *A.*2d 855 (App.Div.), *certif. denied*, 107 *N.J.* 652, 527 *A.*2d 471 (1987); *see also In re Jascalevich License Revocation*, 182 *N.J.Super.* 455, 472, 442 *A.*2d 635 (App.Div.1982), especially where considerations of public policy are implicated. *See Knoble v. Waterfront Comm'n of N.Y. Harbor*, 67 *N.J.* 427, 431–32, 341 *A.*2d 593 (1975); *In re Marvin Gastman*, 147 *N.J.Super.* 101, 110, 370 *A.*2d 866 (App.Div.1977); *cf. In re Suspension of DeMarco*, 83 *N.J.* 25, 39–40, 414 *A.*2d 1339 (1980). We have been given no reason to depart from that standard in this case.

Affirmed.