**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4951-16T3

IN THE MATTER OF MARION
WILSON, CAMDEN COUNTY,
DEPARTMENT OF CORRECTIONS.

_____

Submitted January 24, 2019 – Decided February 8, 2019

Before Judges Vernoia and Moynihan.

On appeal from the New Jersey Civil Service Commission, Docket No. 2017-74.

William B. Hildebrand, attorney for appellant Marion Wilson.

Christopher A. Orlando, Camden County Counsel, attorney for respondent Camden County Department of Corrections (Howard L. Goldberg, First Assistant County Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent Civil Service Commission (Pamela N. Ullman, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Marion Wilson, a corrections officer with the Camden County Department of Corrections (CCDC), appeals from a June 7, 2017 final agency decision of the Civil Service Commission. The Commission adopted the initial decision of the administrative law judge (ALJ), entered after a hearing, upholding the CCDC's decision to demote Wilson from sergeant to corrections officer based on her admitted violations of various rules, procedures and standards in her role as a supervisor on September 10, 2015.[1]

I.

Wilson does not challenge the Commission's adoption of the ALJ's findings of fact. The ALJ found that on September 10, 2015, Wilson was assigned duties as a supervisor of a "special needs/high risk unit" in the Camden County Correctional Facility. Various written directives pertaining to the unit require that corrections officers conduct "[c]lose [w]atch checks" of the inmates in the unit "every [five] minutes" and record the inmates' names and the times the checks were conducted in a logbook. The directives further require that the assigned supervisors who are on duty when the checks are made review and sign

---

[1] The Commission also adopted the ALJ's decision imposing a five-day suspension for Wilson's December 7, 2015 violation of the CCDC's General Orders #001, #073 and #074 by posting inappropriate comments in "pass on" books used by the CCDC's staff in the Camden County Correctional Facility. Wilson does not appeal that portion of the Commission's final agency decision.

the logbooks.  The logbook entries must be "turned in with the daily paperwork for each shift."

The ALJ further found that on September 10, 2015, Wilson signed paperwork showing two corrections officers conducted close watch checks while Wilson was present in the unit, but a video recording revealed the officers never conducted the checks.[2]  That same day, immediately after it was determined the close watch checks had not been conducted, Wilson was directed to turn over her "tour notes and post logs" from that morning, but she said she did not have a post log and had thrown her tour notes in the garbage.  Wilson's trash was collected but no tour notes were found.

The evidence showed Wilson was in charge of the unit, responsible for ensuring the corrections officers followed the required protocols and conducted the close watch checks, and Wilson's actions constituted serious infractions in violation of clear directives that caused a loss of confidence in Wilson as a supervisor.  A CCDC captain testified that she "felt that a demotion . . . was a fair recommendation of discipline" because Wilson's "actions and [the]

---

[2]  The evidence also showed Wilson signed a logbook page that was blank.  That is, as the supervisor with the responsibility for signing off on the corrections officers' entries documenting their close watch checks, Wilson signed a logbook page before the officers had actually made any of their entries.

[o]fficers not doing their [checks] in a [m]ental [h]ealth area . . . was dereliction of her duties." The captain testified she "could not trust [Wilson] to supervise staff" and "[does] not have confidence that [Wilson] could do her job as a [s]upervisor."

The ALJ found Wilson committed each of the numerous offenses for which she was charged: failure to perform her duties, N.J.A.C. 4A:2-2.3(a)(1); insubordination, N.J.A.C. 4A:2-2.3(a)(2); conduct unbecoming a public employee, N.J.A.C. 4A:2-2.3(a)(6); neglect of duty, N.J.A.C. 4A:2-2.3(a)(7); other sufficient cause, N.J.A.C. 4A:2-2.3(a)(12); and violating the Camden County Correctional Facility Rules of Conduct 1.1, violations in general; 1.2, conduct unbecoming; 1.3, neglect of duty; 1.4, insubordination; 2.10, inattentiveness to duty; 3.1, supervision; 3.2, security; and 3.6, departmental reports, and Camden County Correctional Facility General Orders #073 and #074 and Supervisor General Order #001.

The ALJ noted that Wilson did not dispute that she committed the offenses charged and challenged only the reasonableness of the demotion as a sanction. The ALJ noted Wilson's prior disciplinary history, consisting of "several similar offenses committed within the preceding seventeen years," and including seven

4

similar offenses and "approximately nine" instances of "minor disciplinary charges" within the previous seven years.

The ALJ considered the concept of progressive discipline and explained that a "failure to adhere to security precautions" in a correctional facility "could have potentially serious consequences, which may give rise to a more serious penalty regardless of the lack of any past disciplinary consequences." The ALJ further found Wilson's offenses were "critical to [the] security and safety of inmates and fellow employees." The ALJ rejected Wilson's contention that demotion was too severe a sanction because it would impact Wilson's pension benefits when she retired, finding the argument "fallacious" because it ignored that the CCDC's "utmost concern" is to provide a safe and secure facility for the inmates and staff.

As noted, the ALJ concluded the demotion of Wilson was appropriate under the circumstances presented. In its final agency decision, the Commission adopted the ALJ's findings and recommendation. This appeal followed.

II.

On appeal, Wilson does not contest the Commission's determination that she committed the various offenses with which she was charged. She focuses solely on the discipline imposed and argues the demotion is too harsh. She

A-4951-16T3

reprises her claim that the demotion will have a substantial impact on the pension benefits she will receive during her retirement.[3] Having reviewed the record and those arguments in light of applicable law, we affirm.

Our review of administrative agency actions is limited. In re Herrmann, 192 N.J. 19, 27 (2007). We will not upset an agency's final quasi-judicial decision absent a "clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Id. at 27-28. This same deferential standard applies to our review of the agency's choice of a disciplinary sanction. Id. at 28. We "accord substantial deference to an agency head's choice of remedy or sanction." Id. at 34-35 (quoting Div. of State Police v. Jiras, 305 N.J. Super. 476, 482 (App. Div. 1997)).

We review discipline only to determine whether the "punishment is so disproportionate to the offense, in the light of all of the circumstances, as to be shocking to one's sense of fairness." In re Stallworth, 208 N.J. 182, 195 (2011) (citation omitted). Moreover, as our Supreme Court has "cautioned, courts should take care not to substitute their own views of whether a particular penalty is correct for those of the body charged with making that decision." In re Carter, 191 N.J. 474, 486 (2007).

---

[3] The record reflects that Wilson retired on March 1, 2017.

A-4951-16T3

Measured against this standard, we find no basis to reverse the ALJ's findings and conclusion, which the Commission adopted. Our review makes plain the Commission's decision is supported by sufficient credible evidence and that the demotion is justified. Id. at 484; see R. 2:11-3(e)(1)(D). Wilson's conduct related directly to her supervisory duties as a sergeant, constituted a violation of clear and unequivocal directives related to the performance of her duties and had the potential to affect the safety and security of high-risk inmates and the corrections officers under Wilson's supervision. In addition, Wilson not only neglected her clearly defined supervisory job responsibilities, she intentionally created the false impression that two corrections officers she was charged with supervising performed duties when they had not.

We reject Wilson's contention the demotion is inconsistent with the notion of progressive discipline. There is no requirement that progressive discipline be imposed in every case. Herrmann, 192 N.J. at 33. It is inapplicable "when the misconduct is severe, when it is unbecoming to the employee's position or renders the employee unsuitable for continuation in the position, or when application of the principle would be contrary to the public interest." Ibid. Here, the evidence supports the Commission's finding that Wilson's conduct demonstrated she was unsuitable to continue in her role as a supervisor and her

continuation in a supervisory position was inimical to the safety and security of the inmates and staff.

Given the circumstances presented, and Wilson's prior disciplinary history, the demotion does not "shock[] . . . [our] sense of fairness," <u>Stallworth</u>, 208 at 195 (quoting <u>Carter</u>, 191 N.J. at 484), and we find no basis warranting reversal of the Commission's decision. Wilson's remaining arguments to the contrary, including her claim the demotion is too harsh because it will result in a reduction in her pension benefits, are without sufficient merit to warrant discussion in a written opinion. <u>See</u> <u>R.</u> 2:11-3(e)(1)(E). Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION