**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1820-22

IN THE MATTER OF
STEVEN ALLEN,
GLOUCESTER COUNTY
SHERIFF'S OFFICE.

_____

Submitted March 6, 2024 – Decided May 17, 2024

Before Judges Accurso and Walcott-Henderson.

On appeal from the New Jersey Civil Service Commission, Docket No. 2021-1765.

Alterman & Associates, LLC, attorneys for appellant Steven Allen (Arthur J. Murray, on the brief).

Brown & Connery, LLP, attorneys for respondent Gloucester County Sheriff's Office (Michael Joseph DiPiero and Jośe Antonio Calves, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent New Jersey Civil Service Commission (Brian D. Ragunan, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Steven Allen appeals from a February 22, 2023 final agency decision of the Civil Service Commission upholding the decision of the Gloucester County Sheriff's Office to remove him as a sheriff's officer for conduct unbecoming following a failed random drug test. Allen admits he illegally used marijuana but claims the Sheriff's Office "contributed to that positive drug test" and Allen's "self-ingestion" of the drug by re-hiring a fellow officer who'd assaulted Allen four years before. The Commission affirmed the initial decision of the Administrative Law Judge rejecting that defense and finding Allen's removal appropriate under the circumstances. We affirm.

The essential facts developed before the ALJ are undisputed. Allen was a sixteen-year veteran of the sheriff's office with no significant disciplinary history when he tested positive for marijuana in September 2020. Allen testified he'd been smoking marijuana daily off-duty for two months before his random test. He knew his use of marijuana was then illegal and a violation of both the Attorney General's Law Enforcement Drug Testing Policy and the Sheriff's Office Rules of Conduct — both of which state illegal drug use will result in termination.[1]

---

[1] Although recreational drug use of marijuana was made legal in New Jersey in February 2021 through the enactment of the Cannabis Regulatory,

A-1820-22

Allen testified his use of marijuana stemmed from the emotional effects of an assault in December 2016 by another officer, while on duty, that resulted in surgeries for ulnar nerve decompression in his dominant hand and a cervical disc replacement for which he was out-of-work for a total of six months. Following a departmental investigation, his assailant resigned in April 2017 rather than face administrative charges.

The Department, however, re-hired the officer in October 2019. Allen testified he was advised by a lieutenant that the officer, an investigator, was being re-hired, that he would be assigned to a specialized unit in the prosecutor's office, and thus the two would not have to see each other, and Allen would never "have to deal with him." Allen testified the investigator's re-hiring caused him a great deal of anxiety and that he complained to his supervisors about it and was prescribed anti-anxiety medication by his doctor.

According to Allen, he thereafter saw the investigator once or twice a month in the courthouse, and that the department once had to rearrange his appointment at the firing range to re-qualify with his service weapon to avoid a

Enforcement Assistance, and Marketplace Modernization Act, N.J.S.A. 24:61-31 to -56, use or possession of unregulated marijuana is not protected by the statute, and the Attorney General has mandated the continued "zero tolerance for unregulated marijuana consumption by officers at any time, on or off duty, while employed in this State."

A-1820-22

time when the investigator was serving as a range instructor. Allen testified the two never spoke.

Allen also testified he complained to his supervisors about being included among the recipients of a group email from the investigator about two months before his random drug test. Allen testified that "seeing his name, it just overwhelmed me." Although Allen claimed he complained in writing about the email, the writing was not introduced at trial and Allen admitted he didn't otherwise complain to his superiors in writing or seek a different or stronger prescription from his doctor before "self-medicating" with marijuana to deal with his anxiety. He also testified he didn't seek help from the Employee Assistance Program "[b]ecause [he] already [felt] like the department failed [him] in so many ways."

Allen presented the testimony of a board-certified forensic psychiatrist who had treated from 500 to 600 law enforcement officers throughout his career and evaluated another 14,000 on behalf of various law enforcement agencies. The doctor testified that Allen suffered an acute stress reaction to the 2016 assault by his fellow officer, which then led to moderate but chronic Post Traumatic Stress Disorder, a mild post concussive syndrome, a mild traumatic brain injury and major depression. The doctor testified that he did

4

not believe Allen was fit for duty because his mind was not sufficiently clear, he couldn't obtain or sufficiently process information, "and he is hounded by the demons of his experience." According to the doctor, Allen suffered "a very traumatic event that has impaired him in many ways, . . . likely permanently," and unfortunately "found his way to marijuana," which provided him "a sense of comfort and relief" from the "fear and shame of interacting with" his assailant.

On cross-examination, the doctor conceded he wasn't aware Allen had been prescribed medication for anxiety and depression before he began using marijuana. In response to questions from the ALJ, the doctor testified that "marijuana is very effective, and in many ways it's much safer than alcohol," but acknowledged he'd never prescribed marijuana as a treatment for PTSD or anything else and was not licensed to do so.

After hearing the testimony, the ALJ concluded Allen admitted knowingly using marijuana in violation of State law, the Attorney General's Drug Testing Policy and the Sheriff's Office Rules of Conduct, and that termination was the appropriate penalty. The ALJ found Allen's testimony rehearsed, self-serving, inconsistent, and ultimately not credible. Specifically, the ALJ rejected Allen's effort to blame the Sheriff's Office for his illegal use

A-1820-22

of marijuana by not protecting him from the officer who had assaulted him four years before.

Although acknowledging an employer's duty to protect its employees from a hostile work environment, the judge found no credible evidence that the Sheriff's Office had failed its duty here. The ALJ noted Allen admitted being advised in 2019 that the Department was re-hiring his assailant, the Department assigned the investigator to the Prosecutor's Office to limit contact between the two and when Allen "was inadvertently scheduled to have [his fellow officer] as his range instructor, [the Sheriff's Office] immediately remedied the situation by arranging for a different instructor" for Allen. Moreover, the evidence showed the two men did not interact after the re-hiring, Allen never lodged any written complaints with his superiors about the stress and anxiety he allegedly felt, and he failed to avail himself of the psychological assistance provided by the Sheriff's Office.

The ALJ rejected the testimony of Allen's expert as unpersuasive, finding the doctor was not aware Allen had been taking prescribed anti-anxiety medications at the time he began using marijuana and "praised the use of marijuana without explaining how it addressed each of the maladies" Allen allegedly suffered. The ALJ was not convinced by the expert's diagnosis of

6

Allen as suffering from PTSD and found the expert's testimony about the efficacy of marijuana "as a cure for anxiety was belied" by his failure to having prescribed marijuana for that purpose or any other.

The ALJ acknowledged New Jersey's policy preference for progressive discipline but found it "well established that when the underlying conduct was of an egregious nature, the imposition of a penalty up to and including removal would be appropriate, regardless of the individual's disciplinary history." See In re Carter, 191 N.J. 474, 483-85 (2007). The ALJ found our courts unanimous in recognizing "a police officer is a special kind of public employee," Moorestown v. Armstrong, 89 N.J. Super. 560, 566 (App. Div. 1965), and that an infraction "so serious as to go to the heart of his capacity to function appropriately" is conduct unbecoming of the position, warranting the most serious of sanctions, In re Herrmann, 192 N.J. 19, 34 (2007) (quoting Div. of State Police v. Jiras, 305 N.J. Super. 476 (App. Div. 1997)).

The ALJ found that Allen's conduct in violating "State and County guidelines regarding illegal drug use, his use of marijuana for months before being caught, and failing a drug test while he was on duty, certainly encompassed conduct that would adversely affect the morale or efficiency of a governmental unit," have "a tendency to destroy public respect in the delivery

7

of governmental services," see Karins v. Atl. City, 152 N.J. 532, 554 (1998), and "went to the heart of the officer's ability to be trusted to function appropriately in his position and fall within the guidelines and caselaw that call for dismissal." The Commission "wholeheartedly" agreed "the evidence failed to show that [Allen's] drug use resulted from any actions taken by the appointing authority" and that his "removal from employment [was] neither disproportionate to the offenses nor shocking to the conscience."

Allen appeals, reprising his arguments to the ALJ and the Commission that because the Sheriff's Office re-hired Allen's 2016 assailant in 2019 without considering the adverse effects of the decision on Allen, the Sheriff's Office's termination of Allen for the failed drug test in 2020 was done with "unclean hands"; that the Sheriff's Office should be equitably estopped from removing Allen based on his failed drug test because it was complicit in that positive test; that "accidental ingestion" has been recognized as a valid defense to a failed drug test by a law enforcement officer; and that "the most equitable way of resolving this matter" is to reinstate Allen to allow him to apply for a disability retirement.

Our review of administrative agency actions is limited. Herrmann, 192 N.J. at 27. We will not upset an agency's final quasi-judicial decision absent a

"clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Id. at 27-28. This same deferential standard applies to our review of the agency's choice of a disciplinary sanction. Id. at 28. We review discipline only to determine whether the "'punishment is so disproportionate to the offense, in the light of all of the circumstances, as to be shocking to one's sense of fairness.'" In re Stallworth, 208 N.J. 182, 195 (2011) (quoting Carter, 191 N.J. at 484).

Although the concept of progressive discipline, which promotes uniformity and proportionality in the discipline of public employees, has long been a recognized and accepted principle, see West New York v. Bock, 38 N.J. 500, 523-24 (1962), our courts have also long acknowledged that "some disciplinary infractions are so serious that removal is appropriate notwithstanding a largely unblemished prior record." Carter, 191 N.J. at 484. In cases involving the discipline "of police and corrections officers, public safety concerns may also bear upon the propriety of the dismissal sanction." Id. at 485.

Finally, we give "due regard to the opportunity of the one who heard the witnesses to judge their credibility." Logan v. Bd. of Review, 299 N.J. Super. 346, 348 (App. Div. 1997). We will not disturb the ALJ's credibility findings

9

unless they were "arbitrary or not based on sufficient credible evidence in the record as a whole." Cavalieri v. Bd. of Trs. of PERS, 368 N.J. Super. 527, 537 (App. Div. 2004).

Applying those standards here, Allen has provided us no reason to reverse the findings of the ALJ adopted by the Civil Service Commission. Allen admits to his illegal use of marijuana, and the ALJ, who had the opportunity to hear the testimony of the witnesses and to evaluate their credibility, found Allen's testimony as to why he did so "rehearsed, self-serving" and ultimately not credible. The ALJ found no credible evidence Allen had ever complained to his superiors about the Department's re-hiring of his assailant, and that by Allen's own admission the two had virtually no contact after the investigator's return. The ALJ was not persuaded by the expert's testimony that Allen suffered from PTSD as a result of the 2016 assault or that his use of marijuana in July and August of 2020 had anything to do with the Department's re-hiring of his fellow officer and assailant nearly a year before.

Our review makes plain the decision of the Civil Service Commission is supported by sufficient credible evidence in the record as a whole and the sanction of removal was justified. See R. 2:11-3(e)(1)(D); Carter, 191 N.J. at

10

Allen's arguments to the contrary are without sufficient merit to warrant discussion in a written opinion.  See R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11