**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0885-22

IN THE MATTER OF
LISA SANES, HOBOKEN,
DEPARTMENT OF
ADMINISTRATION.

_____

Argued July 30, 2024 – Decided August 13, 2024

Before Judges Sabatino, Perez Friscia, and Chase.

On appeal from the New Jersey Civil Service Commission, Docket No. 2021-126.

Lisa Sanes, appellant, argued the cause pro se (David F. Corrigan, on the briefs).

Alyssa L. Wells, Assistant Corporation Counsel, argued the cause for respondent City of Hoboken (Brian J. Aloia, Corporation Counsel, attorney; Alyssa L. Wells, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent New Jersey Civil Service Commission (Brian D. Ragunan, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Lisa Sanes appeals the October 12, 2022 final administrative decision of the Civil Service Commission upholding the Office of Administrative Law's ("OAL") decision terminating her employment from the City of Hoboken ("Hoboken") for insubordination and conduct unbecoming of a public employee. We affirm.

I.

Appellant most recently worked as a keyboarding clerk for Hoboken in the Department of Administration. On March 13, 2020, Hoboken implemented health and safety protocols in response to the onset of the COVID-19 pandemic, which included the closures of public buildings, including City Hall where appellant worked. All non-essential employees were ordered to work remotely until otherwise notified and to avoid appearing at City Hall if they experienced symptoms of, or tested positive for, COVID-19. The Department distributed the directives to all employees through emails, which were sent frequently to update staff members on the closure status and anticipated reopening of buildings as more information regarding the pandemic became available. Appellant continued to report to work in-person until March 31, when staff superiors instructed her to work from home because she was considered a non-essential employee.

2

On April 27, appellant emailed City Business Administrator Jacob Freeman and City Assistant Business Administrator Caleb Stratton, informing them she had tested positive for COVID-19. After communicating with Freeman and Stratton, as well as other City personnel, appellant was placed on leave under the Families First Coronavirus Response Act ("FFCRA"), H.R. 6201, 116th Con. (2020). While on FFCRA leave, she received full pay from April 28 to May 11.

The surveillance footage from May 4, shows appellant entering City Hall, using her credentials to pass through security, and first entering her office in the Department before visiting the Clerk's Office where, according to the records clerk, she filed a request under the Open Public Records Act ("OPRA").[1] Appellant's duties as keyboarding clerk do not include filing OPRA requests.

Two days after appellant's visit to City Hall, she spoke at a City Council meeting, which was held virtually. Prior to speaking, she apologized for any coughing that may interfere with her voice, explaining it was due to her "battling COVID-19."

On May 12, Hoboken issued appellant two Preliminary Notices of Disciplinary Action: one seeking her immediate suspension, and the other

---

[1] N.J.S.A. 47:1A-1 to -13.

seeking her termination based on insubordination, conduct unbecoming of a public employee, and other sufficient cause. On June 29, after a departmental hearing, Hoboken issued a Final Notice of Disciplinary Action sustaining the charges and calling for appellant's removal effective the same day. Appellant filed an appeal, and the matter was transmitted to the OAL as a contested case.

At a three-day OAL hearing, several witnesses testified for Hoboken, including Freeman, Stratton, and his assistant, Daisy Amado. Appellant also testified on her own behalf. In a written decision, the Administrative Law Judge ("ALJ") found Hoboken's witnesses "forthright and credible," and their testimony persuasive, consistent, and corroborated by other offered evidence. The ALJ found appellant's testimony "riddled with inconsistencies, lacking internal consistency, inherently improbable, and not 'hanging together' with, and discredited and overborne in significant respects by, other evidence in the record." The ALJ expressed substantial doubt over the accuracy, reliability, and believability of appellant's version of the events.

After conducting a thorough and attentive legal analysis and discussion of the facts in this case, the ALJ concluded:

> Appellant's irresponsible, reckless[,] and inexcusable conduct in entering City Hall after testing positive for COVID-19, and "while battling COVID-19," and knowing she was not permitted to enter the building

4

without medical clearance, endangered the health and safety of others and cannot be countenanced. Appellant's unauthorized actions were antithetical to the proper functioning of [Hoboken] and the rules [Hoboken] implemented to keep employees and the public safe. Appellant's failure to acknowledge or appreciate the inappropriateness and severity of her misconduct serves as further support for the conclusion that appellant is unsuitable for her continued employment with [Hoboken]. Based upon the totality of the circumstances . . . appellant's insubordinate and unbecoming conduct is of a sufficiently egregious nature to warrant her termination.

The ALJ issued an initial decision which reflected her findings and ordered appellant's removal from her position effective June 29, 2020. The matter was then transmitted to the Commission. On October 12, 2022, the Commission delivered its final agency decision explaining appellant's infractions were "clearly worthy [of] removal from employment." This appeal followed.

II.

Appellant argues she should be reinstated to her position because the Commission's decision, which adopted the ALJ's initial decision that she violated the COVID-19 restrictions is not supported by substantial credible evidence in the record. Moreover, she maintains the decision was arbitrarily based on improper prejudicial influences because of the pandemic which inflamed the decision-making process. Appellant also argues that based on her

years of good service, it was arbitrary and capricious to terminate her without progressive discipline when others were not fired.[2]

"[A]n appellate court reviews agency decisions under an arbitrary and capricious standard." Zimmerman v. Sussex Cnty. Educ. Servs. Comm'n, 237 N.J. 465, 475 (2019). See Melnyk v. Bd. of Educ. of the Delsea Reg'l High Sch. Dist., 241 N.J. 31, 40 (2020). "An agency's determination on the merits 'will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" Saccone v. Bd. of Trs., Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014) (quoting Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)); In re Herrmann, 192 N.J. 19, 27-28 (2007). The party challenging the administrative action bears the burden of making that showing. Lavezzi v. State, 219 N.J. 163, 171 (2014).

On appeal, our role in reviewing all administrative action is generally limited to three inquiries:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly

---

[2] Appellant has a pending Law Division action alleging, among other things, discrimination/bias regarding this incident. We take no position on the claim as it was not properly before this court.

A-0885-22

erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

[Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).]

See also In re Proposed Quest Acad. Charter Sch. of Montclair Founders Grp., 216 N.J. 370, 383 (2013); Mazza v. Bd. of Trs., Police & Firemen's Ret. Sys., 143 N.J. 22, 25 (1995).

"When an agency's decision meets those criteria, then a court owes substantial deference to the agency's expertise and superior knowledge of a particular field." Herrmann, 192 N.J. at 28. See also In re Request to Modify Prison Sentences, 242 N.J. 357, 390 (2020) ("Wide discretion is afforded to administrative decisions because of an agency's specialized knowledge"); Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 10 (2009) (in assessing the three criteria we "must be mindful of, and deferential to, the agency's 'expertise and superior knowledge of a particular field'"); City of Newark v. Nat. Res. Council, Dep't of Env't Prot., 82 N.J. 530, 539 (1980) (the deferential standard is consistent with a "strong presumption of reasonableness that an appellate court must accord an administrative agency's exercise of statutorily delegated responsibility"); In re Musick, 143 N.J. 206, 216 (1996) (the deferential standard is consistent with the judiciary's "limited role . . . in

A-0885-22

reviewing the actions of other branches of government"). "Deference controls even if the court would have reached a different result in the first instance." Herrmann, 192 N.J at 28. However, "[a]lthough administrative agencies are entitled to discretion in making decisions, that discretion is not unbounded and must be exercised in a manner that will facilitate judicial review." In re Vey, 124 N.J. 534, 543-44 (1991).

III.

In reaching the decision to order appellant's termination, the ALJ provided substantial analysis explaining why she found the testimony of Freeman and Stratton credible and appellant's testimony incredible. The ALJ found no evidence indicative of an improper motive or bias by Hoboken staff to testify falsely against appellant. The ALJ explained why appellant's inconsistent testimony failed to lead to any logical or practical conclusions as to why she would visit City Hall for a reason not warranting disciplinary action. Additionally, the ALJ took no issue with the distribution of emails to City staff explaining the COVID-19 protocol and City Hall closures, and further found no reason to believe appellant was not provided this information. Notably, the ALJ emphasized the severity of circumstances the COVID-19 pandemic created,

which forced businesses and entities to adapt and adjust quickly especially in the early stages when this incident occurred.

Appellant contends the Commission committed reversible error by not considering her entire meritorious work record, contrary to the Civil Service's system of progressive discipline. Under the Civil Service Act, the system of progressive discipline guides the appropriateness of public employee discipline. W.N.Y. v. Bock, 38 N.J. 500, 519 (1962).

> "Since Bock, the concept of progressive discipline has been utilized in two ways": (1) to "ratchet-up" or "support imposition of a more severe penalty for a public employee who engages in habitual misconduct"; and (2) "to mitigate the penalty" for an employee who has a record largely unblemished by significant disciplinary infractions.
>
> [In re Stallworth, 208 N.J. at 196 (quoting Herrmann, 192 N.J. at 30-33).]

However, the seriousness of the employee's infraction must be balanced with the nature of the penalty justified under the circumstances. See Henry v. Rahway State Prison, 81 N.J. 571, 580 (1980) (requiring the Commission to adequately consider the seriousness of the charges against the employee before reducing the penalty imposed). Our Court has recognized that the principle of progressive or incremental discipline is not a "fixed and immutable rule" that must be applied in every disciplinary setting. Herrmann, 192 N.J. at 33. Rather,

"some disciplinary infractions are so serious that removal is appropriate notwithstanding a largely unblemished prior record." In re Carter, 191 N.J. 474, 484 (2007). Progressive discipline is not a necessary consideration "when the misconduct is severe, when it is unbecoming to the employee's position or renders the employee unsuitable for continuation in the position, or when application of the principle would be contrary to the public interest." Herrmann, 192 N.J. at 33. In this regard, "progressive discipline has been bypassed when an employee engages in severe misconduct, especially when . . . the misconduct causes risk of harm to persons or property." Ibid. See also Henry, 81 N.J. at 580 (prison employee falsifying reports); Bowden v. Bayside State Prison, 268 N.J. Super. 301, 306 (App. Div. 1993) (violation of rules barring inappropriate relationships between corrections officers and prisoners). Courts have also upheld the dismissal of employees for engaging in conduct unbecoming to their position without regard to whether the employee had a substantial past disciplinary record. Herrmann, 192 N.J. at 34. See, e.g., Div. of State Police v. Jiras, 305 N.J. Super. 476, 482 (App. Div. 1997) (upholding a State Trooper's dismissal for "an unprovoked assault on a prisoner").

Although appellant's disciplinary record in and of itself might warrant termination as the next step of progressive discipline, the seriousness of

appellant's infraction and the danger she posed to others is a critical consideration in this case. The City and the Commission had reasonable grounds to conclude appellant's actions were highly inappropriate and inexcusable, and violated the standards of proper conduct expected of a public employee. Appellant's irresponsible conduct in entering City Hall after testing positive for COVID-19 and "while battling COVID-19" and knowing she was not permitted to enter the building endangered the health and safety of the lives of City employees. Progressive discipline was not required under these distinctive circumstances.

There is no evidence suggesting we should question the Commission's decision adopting the ALJ's findings concerning appellant's actions. Appellant fails to provide any evidence explaining what specifically makes the Commission's decision arbitrary, capricious, or unreasonable.[3] Therefore, given the deferential standard of review, we see no reason why we should not accept the Commission's independent factual findings and legal conclusions. Appellant received direct instructions not to enter City Hall during the closures and to

---

[3] We are aware of the Court's recent decision in In the Matter of Brian Ambroise, ____ N.J. ___, ___ (2024). However, that case is distinguishable because here the agency, ALJ, and Commissioner all agreed that termination was the appropriate remedy.

contact a supervisor should she have any reason to enter while Hoboken continued to monitor the ongoing pandemic-related emergencies. No members of the public were allowed to enter but appellant nevertheless entered City Hall using her status as an employee to gain access for personal reasons. In doing so, she not only disregarded instructions from her superiors but entered after recently testing positive for COVID-19, which jeopardized the health and safety of any employee she might have encountered. Given the lack of compelling evidence or legal principles supporting any of her arguments and the substantial deference owed, nothing suggests we make separate findings beyond the ALJ's and the Commission's.

To the extent we have not specifically addressed any other contentions raised by defendant, they lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION